DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that awarded permanent custody of Diamond H., born on November 29, 1998, to Lucas County Children Services Board. For the reasons that follow, this court affirms the judgment of the trial court.
Appellants Melissa H. and Kenneth S., natural parents of Diamond H., set forth the following assignments of error:
"FIRST ASSIGNMENT OF ERROR
 "THE TRIAL COURT INCORRECTLY EXTENDED THE TIME FOR THE DISPOSITIONAL PHASE OF THE PERMANENT CUSTODY HEARING, THEREBY COMMITTING REVERSIBLE ERROR.
"SECOND ASSIGNMENT OF ERROR
 "THE MANIFEST WEIGHT OF THE EVIDENCE DID NOT SUPPORT THE DECISION OF THE TRIAL COURT. THE ELEMENTS OF DEPENDENCY WERE NOT PROVED."
The facts that are relevant to the issues raised on appeal are as follows. On February 9, 1999, appellee Lucas County Children Services Board ("LCCS") filed a "COMPLAINT IN DEPENDENCY AND NEGLECT: PERMANENT CUSTODY, AND MOTION FOR SHELTER CARE HEARING." At the time Diamond was born, as well as when the complaint was filed, Melissa H. was married to Vincent A., who was presumed to be the child's legal father. In the complaint, LCCS alleged that: Melissa's family had a ten-year history with Maryland child welfare authorities which arose from sexual and physical abuse of Melissa and her siblings by their parents; Melissa's father was convicted of criminally assaulting his sons and was alleged to have touched another of Melissa's daughters in a sexual manner; Melissa's father has a history of substance abuse; Melissa has a history of mental health problems, including a diagnosis of suicidal and homicidal tendencies; Melissa has been diagnosed as being developmentally delayed and functions at a third-or fourth-grade level; Melissa has been institutionalized several times due to violent behavior and her mental condition; against the advice of LCCS, Melissa has left two of her children in the care of her parents; temporary custody of Melissa's two other daughters was awarded to LCCS in 1996 and a ruling on a motion for permanent custody was pending; in 1998, the agency was awarded permanent custody of Melissa's five-month-old son; Melissa has another child placed in the legal custody of a relative; Melissa's husband, Vincent A., has a history of sexual abuse of minors and Melissa was aware of that when she married him; Melissa was associating with Kenneth S., who had been violent with Melissa on numerous occasions; Melissa has a history of other abusive relationships with men; Melissa had failed to establish stable housing as required by her case plan and was currently living with her parents in Baltimore; and Melissa had received unfavorable reports from instructors on the parenting classes she attended. The shelter care hearing was held on February 9, 1999, and at the conclusion of the hearing emergency temporary custody of Diamond was granted to LCCS.
The case was set for an adjudication hearing on May 5, 1999. At that time, Melissa moved to dismiss the complaint and the motion was denied. The trial court also denied a request by Kenneth S. for a blood test to establish paternity of Diamond. LCCS called Diane Johns, a caseworker with LCCS, as its first witness. Johns testified that she was Melissa's caseworker from July 1996 until November 1997. Johns stated that prior to the birth of Diamond the agency obtained permanent custody of two of Melissa's daughters and a son. Johns testified that Melissa's case plan called for a psychological evaluation with follow-up counseling, parenting classes, and drug and alcohol assessment. Melissa also was to locate and maintain independent housing. Johns stated that when Melissa expressed her intention to marry Vincent, the agency explained that doing so would harm her chances of being reunified with her children because Vincent was incarcerated for a sex offense. Melissa insisted that marrying Vincent would not affect either her case plan or reunification with her children. The agency later saw in the newspaper that Melissa and Vincent had obtained a marriage license.
Johns stated that she had limited contact with Kenneth toward the end of her involvement with this case. On one occasion, Melissa attempted to bring Kenneth to a visitation with her children and represented him as her cousin. When she was told that she could not bring other people to her visitations, Melissa argued and a supervisor had to be called. Johns further testified that it was her understanding that Kenneth was not Melissa's cousin and said she had occasion to question Melissa's truthfulness about once a week. Johns stated that the agency learned that Melissa's parents had extensive involvement with child protection services in Maryland while raising Melissa and her siblings due to sexual abuse and domestic violence. Johns further stated that when she became involved with Melissa's case, the agency was concerned because Melissa was living with her grandparents in housing that was considered unfit. During this time, Melissa reported that she was involved with a man who beat her and said that she had been assaulted by various other men.
Johns further testified that the agency was concerned with Melissa's parenting skills due to failure to follow through with medical care for her children, a lack of patience and problems with basic child care. Johns also had concerns about several of Melissa's residences. In one case, this was because a neighbor reportedly had broken in and raped Melissa, she had no furniture and was soon to lose her utilities. Melissa also continued to live with her parents, then moved several times and had problems with alleged domestic violence. Johns was involved in the proceedings wherein permanent custody of Melissa's other children was awarded to LCCS and stated that she believed such an award was in the best interest of those children because Melissa did not complete her case plan, was volatile and hostile, was continually pressing charges against people in the community for assault and was frequently assaulted herself. Johns observed Melissa's father intoxicated at home visits and stated that he came to several agency visitations intoxicated and was asked to leave.
At this point in the hearing, Vincent A. appeared and expressed a desire to obtain legal counsel. Until that time, Vincent had been "whereabouts unknown." Vincent was served a copy of the complaint and the hearing was continued.
Testimony resumed on May 19, 1999. Officer Eric Schwalbe, Toledo Police Department, testified that he had contact with Melissa in January 1998 when Melissa reported being beaten by Kenneth during an altercation at their home. A temporary protection order was issued against Kenneth as a result of that incident. Officer Schwalbe also responded to a call from security at St. Vincent Mercy Medical Center regarding another altercation between Melissa and Kenneth. Officer Schwalbe reported that Melissa showed visible signs of injury on both occasions.
Kimberly Artis, M.D., a pediatrician employed by St. Vincent Mercy Medical Center, testified that she examined Diamond when the child was two months old. Diamond was brought to the hospital by her foster mother, who reported that the child had a cough and was congested. Dr. Artis testified that Diamond was diagnosed with gastroesophageal reflux disease, an illness that is not related to neglect or abuse and which usually improves with age. The doctor further testified that Melissa had provided her with Diamond's newborn medical records and that there was nothing in those records indicating neglect or abuse.
Officer Mira Banks, Toledo Police Department, testified that she responded to a call from St. Vincent Mercy Medical Center on February 17, 1998 after Melissa arrived and reported being assaulted by Kenneth. Officer Banks reported seeing a bite mark and bruising on Melissa's chin.
Officer Tim Rutkowski, Toledo Police Department, testified that he was dispatched to Kenneth's house on January 9, 1999. Kenneth and Melissa reported that Melissa had taken Diamond to visit Kenneth and that Vincent had called Kenneth and threatened him.
Carol McCuen, a chemical dependency counselor with Substance Abuse Services, Inc., testified that she conducted an alcohol drug assessment on John H., Melissa's father, in February 1998 and recommended intensive outpatient treatment. McCuen stated that she did not know whether Melissa had ever left Diamond in the care of her father.
Jeffrey Steedman, a deputy sheriff with the Lucas County Sheriff's Office, testified that on February 9, 1999, he placed Melissa under arrest after she and two other women assaulted Kenneth as he was leaving the Family Court Center. Officer Steedman stated that he did not see Melissa strike Kenneth but that she was in the middle of the fight while the other two women threw punches. The officer further testified that he placed Melissa under arrest for disorderly conduct when she disregarded his orders to step away from the fight. Officer Steedman recalled that one of the women was holding a baby in her arms during the incident but stated he was not sure whether it was Melissa.
Ann Hodge, a caseworker with LCCS, testified that she was assigned to Melissa's case in January 1999. Hodge stated that she had contact with Melissa through cases involving three of her other children. Two of those cases were still open when the agency was notified that Melissa had another baby in November 1998. The agency was concerned for the new baby's welfare because Melissa had an ongoing relationship with her family, which the agency considered to be a problem, and because Melissa had a history of numerous domestic violence incidents. The agency determined that there was a need to pursue custody of Diamond but at that time did not know where the baby was. The agency filed the complaint in February 1999 when it learned that Melissa had returned to the Toledo area and was living with her parents. Hodge stated that Melissa had reported that her father was an alcoholic and used drugs, that her parents' home was not fit for children, and that there was violence as well as a history of firearms in the home. Hodge testified that Melissa had acknowledged an involvement with child protection services in Maryland when she was a child. After the agency obtained temporary custody of Diamond, Hodge scheduled office visits with Melissa but Melissa did not keep the appointments. Hodge further testified that Kenneth had always cooperated with her and that she had never witnessed any violent behavior on his part. She stated that she believes that Kenneth cares for the baby's well being.
At the close of testimony, the trial court found that LCCS had shown by clear and convincing evidence that Diamond was a dependent child in an environment that warranted the agency's taking emergency custody. The matter proceeded directly to disposition and the following testimony was heard.
Joyce Vongvatunyo testified that Melissa stayed with her in Baltimore for about two weeks after Diamond was born and she observed Melissa caring appropriately for the child. Maimie Gaiter, Melissa's grandmother, testified that Melissa moved in with her when Diamond was about one week old and continued to live with her for about two months prior to returning to Toledo. Gaiter stated that if Melissa regained custody of Diamond they would live with Gaiter in Maryland. She testified that Melissa took good care of Diamond and that Diamond was happy.
The matter was continued and testimony resumed on October 21, 1999. At that time, the trial court found that blood test results indicated that Kenneth S. is the biological father of Diamond H. The trial court then removed Vincent A. as a party to this case.
Dr. Kimberly Artis again testified as to her medical care of Diamond. The doctor testified as to Diamond's gastroesophageal reflux disease and stated that the baby was being seen by a speech pathologist to help with oral motor issues that were affecting her ability to eat. She stated that Diamond is on medication for the reflux. Dr. Artis also testified as to concerns about Diamond's gross motor abilities and said that the baby was involved with early intervention for that. Dr. Artis testified that if Diamond were not taken to a speech pathologist and treated for the reflux disease she could experience problems.
Officer Gary Zolciak, Toledo Police Department, testified as to a domestic violence report he took from Melissa on August 22, 1999 when she stated that she had been receiving harassing phone calls from Kenneth.
LCCS caseworker Ann Hodge was re-called to testify as to disposition. Hodge testified as to her involvement with Melissa's other three children, all of whom were placed in the permanent custody of the agency. Hodge stated that the agency had offered services to Kenneth S. since February 1999 for counseling on domestic violence issues and for parenting. Hodge stated that Kenneth's domestic violence issues have been ongoing for the two years that she has known him. The incidents have resulted in Melissa requiring medical care and have caused Kenneth to be incarcerated on occasion. Hodge has addressed the domestic violence pattern with Kenneth and said he has not completed any services related to that issue. Hodge stated that Kenneth had told her he and Melissa had been living together since April of 1999. Shortly before the hearing, Hodge heard Melissa tell another agency staffer that she and Kenneth were back together.
Hodge further testified that the agency has encouraged Melissa to locate independent, stable housing away from her family. The agency has made referrals for a drug and psychological assessment and has arranged counseling to work on issues arising from Melissa's past victimizations and her current situation. The agency also arranged parenting classes. Hodge stated that Melissa has an ongoing pattern of stopping and starting services and said she does not know of Melissa ever completing any of the services. Hodge testified that she believes it would be in Diamond's best interest to be placed in the permanent custody of LCCS and eventually placed for adoption. She further stated that Diamond is an adoptable child and that Diamond's foster parents are interested in adopting her. Hodge testified that she had no information that Melissa abused drugs or alcohol but expressed concerns that Melissa associates with individuals, such as Kenneth, Vincent and her parents, who put children at risk.
The agency rested its case and asked the trial court to take judicial notice of any evidence admitted in the adjudicatory phase that is applicable to its dispositional decision.
Counsel for Melissa called Shelly Falkenberg, coordinator of the family enrichment program at St. Vincent's Family Care Center. Falkenberg testified that Melissa asked to enroll in a parenting program in 1997 and participated in the program from October 1997 through August 1998. Melissa rejoined the program in January 1999 and attended with her nieces. Falkenberg stated that Melissa initially had difficulty handling her children but currently interacts appropriately and has a longer attention span than she originally did. Falkenberg testified that she believes Melissa would be capable of protecting her children and said she believes Diamond should be reunited with her mother. Falkenberg said her opinion is based on how she observes Melissa's behavior, not on any knowledge of what Melissa does outside of parenting class. Falkenberg testified that Melissa told her she did not want Kenneth around her, but Falkenberg did not know that Melissa was seeing Kenneth again and living with her parents. She stated that Melissa has been untruthful with her in the past.
John H., Melissa's father, testified that he was involved with children services in Maryland for five years and underwent counseling for three years. He admitted that he was convicted of assaulting his sons and that his daughters were sexually molested while living in his home.
At the conclusion of testimony, Diamond's guardian adlitem stated that she stood by her written recommendation, filed on May 5, 1999, in which she recommended that, for the safety and security of the child, permanent custody be awarded to LCCS. On October 29, 1999, the trial court filed its judgment entry in which it found that Melissa and Kenneth have demonstrated a lack of commitment toward Diamond by actions showing an unwillingness to provide an adequate home; that Melissa and Kenneth continue to engage in violent behavior toward each other; that they have not successfully addressed through counseling the issue of violence; that Melissa recently expressed an intention to remain in a relationship with Kenneth; that Melissa has failed to obtain a divorce from Vincent A., a convicted sex offender; that Melissa lives with her parents, who have a history of behavior that puts children at risk; that the foster home in which Diamond has been living since February 1999 is being considered as an adoptive home; and that LCCS has exercised reasonable efforts in this case by providing opportunities for basic case plan services such as counseling, parenting classes and substance abuse services but the parents either did not attend or did not change their behavior. The trial court accordingly found that there was clear and convincing evidence that Diamond cannot or should not be placed with either parent within a reasonable time and that permanent custody is in her best interest. It is from that judgment that both parents appeal.
In their first assignment of error, appellants assert that the trial court erred by failing to hold the dispositional hearing within ninety days after the date on which the complaint was filed as required by R.C. 2151.28(B)(3). The complaint in this case was filed on February 9, 1999. Appellants inaccurately state that the dispositional hearing was not held until October 21, 1999. The case was originally scheduled for hearing on May 5, 1999, and the adjudicatory phase did in fact get underway on that date. Upon the appearance of Vincent A. in the midst of the proceedings, however, the matter had to be continued until May 19, 1999, in order for Vincent to obtain counsel. The dispositional phase of this matter began on May 19, 1999, immediately after the adjudicatory phase concluded. This was ninety-nine days after the complaint was filed. The matter proceeded on that date and was then continued until October 21, 1999, after three earlier dates had to be vacated for various reasons including illness of counsel.
This court first notes that the hearing in this matter began on May 5, 1999, a date within the ninety-day limit. Had Vincent A. not appeared in the midst of that hearing and announced his desire to retain counsel, it is probable that the matter would have proceeded to disposition on that date. When the matter reconvened on May 19, 1999, Kenneth renewed his motion for a blood test to determine paternity and the trial court granted the motion. The blood test was scheduled for May 26, 1999. The parties were advised of that date and were given notice of the date on which disposition would resume. Neither appellant raised objections to any of the continuances of the dispositional hearing. This court has previously found that a party may implicitly waive the right to have a dispositional hearing within ninety days of the filing of the complaint by failing to move for dismissal when it becomes the party's right to do so. In thematter of Bailey D. (Apr. 17, 1998), Lucas App. No. L-96-363, unreported, citing In re Kutzli (1991), 71 Ohio App.3d 843. Finally, appellants have not presented any argument that they were prejudiced by the delay in holding the dispositional hearing.
For the foregoing reasons, this court finds that appellants waived their right to enforce the ninety-day time limit and that delay of the dispositional hearing did not prejudice either party. Accordingly, appellants' first assignment of error is found not well-taken.
In their second assignment of error, appellants assert that LCCS did not prove the elements of dependency and that LCCS did not prove by clear and convincing evidence that they cannot adequately parent their child. Appellant argues that LCCS has essentially "condemned" her because of her past history.
R.C. 2151.04 provides that,
 "As used in this chapter, `dependent child' includes any child:
 "(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship."
At the close of the adjudicatory phase, the trial court stated that it found clear and convincing evidence of "a condition and an environment which causes the State, in the interest of the child, to assume the child's guardianship."
The decision of a trier of fact relating to the adjudication of a child as dependent will not be overturned as against the manifest weight of the evidence, so long as the record contains clear and convincing evidence of dependency. Juv.R. 29(E)(4). Clear and convincing evidence of dependency is that evidence by which the trial court could have formed a firm belief or conviction that the essential statutory elements for dependency have been established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus; R.C. 2151.04.
In the case before us, we find that the conditions and environment described by the witnesses was such as to justify the state's preventing Diamond from entering that environment. There was clear and convincing evidence that to put Diamond into the environment described by the witnesses would place her health and well-being at risk. We therefore find that the trial court did not err by finding Diamond H. to be a dependent child.
As to the trial court's disposition in this matter, appellants assert that LCCS did not show that they cannot adequately parent Diamond.
R.C. 2151.414 provides in pertinent part:
 "(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 "(1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; * * *"
Pursuant to R.C. 2151.414(D), in determining the best interest of a child, the trial court shall consider all relevant factors, including, but not limited to:
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."
Further, R.C. 2151.414(E) states that:
 "(E) In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 "(1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by * * * actions showing an unwillingness to provide an adequate permanent home for the child.
"* * *
 "(11) The parent has had parental rights involuntarily terminated pursuant to section 2151.353 * * * of the Revised Code with respect to the sibling of the child.
"* * *
 "(16) Any other factor the court considers relevant."
This court has thoroughly reviewed the record of proceedings in the trial court and, upon consideration thereof and the law, we find that there was clear and convincing evidence to support the lower court's finding that it was in the best interest of Diamond H. to grant permanent custody to Lucas County Children Services Board. The trial court heard testimony from caseworkers that they feared for Diamond's safety if she were to be returned to her parents' custody, that Melissa continues to exhibit poor judgment in choosing the men with whom she associates, that Melissa and Kenneth have been involved in numerous situations of domestic violence, and that neither parent has made progress on services offered by LCCS. This court therefore finds that the trial court's decision to grant permanent custody of Diamond H. to LCCS was supported by clear and convincing evidence.
Accordingly, based on the foregoing, appellants' second assignment of error is not well-taken.
On consideration whereof, this court finds that substantial justice was done the parties complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellants.
Melvin L. Resnick, J., James R. Sherck, J., Richard W. Knepper,P.J., CONCUR.